WILLIAM C. FELLOWES ET AL. v. THE MADISON INSURANCE
COMPANY.

(No. 512.)

1. The first and second points, stated in the syllabus of the report of the *Madison Insurance Company* v. *Fellowes and others* (vol. 1, p. 217,) re-affirmed.

2. The condition in a policy of insurance, requiring that "all claims" under it, "are barred unless prosecuted within one year from the date of loss," is not void as against public policy.

3. The condition requiring notice and indorsement on the policy, of prior insurance, imposes the duty of compliance on the assured, which can not be cast upon the insurer, except by clear proof of an express agreement between the parties, or of a general usage among underwriters to that effect, and without such proof, the court will not reform the policy, by requiring an indorsement of the prior insurance upon the policy.

GENERAL TERM.—Reserved for decision of the questions arising upon a motion for a new trial, made by the defendant. The action, as originally commenced, would have been, before the adoption of the code, in the form of a common law action, founded upon a policy of insurance, to recover for a loss sustained within its terms. The petition averred the execution of the policy by the defendants, in favor of Sanderson Robert for plaintiffs' account, due payment of the premium, a loss by fire within the term insured, due proof and notice thereof to defendant, and refusal by it to pay the loss.

Among other provisions of the policy, it was declared, that "in case of any other insurance upon the said property, not notified to said company, and mentioned in or indorsed upon this instrument, then this policy shall be void and of no effect; and if any subsequent insurance shall be made upon the property herein insured, which with the sum or sums already insured shall, in the opinion of said company, amount to an *over insurance*, the said company reserve to themselves the right of canceling this policy by paying to the insured the premium *pro rata*, for the unexpired portion

of the term of this insurance. And in case of loss or damage, the insured shall not be entitled to recover of said company any greater proportion thereof than the amount hereby insured shall bear to the whole amount insured on said property."

It was also declared, that "all claims under the policy were barred, unless prosecuted within one year from the date of the loss," and "no insurance shall be considered binding, until the payment of the premium."

The answer, by way of defense, relying upon these provisions of the policy, averred:

1. The non-payment of the premium, up to the time of the loss.

2. That the present action had not been brought or prosecuted, within a year from the time of the loss.

3. That at the time of issuing of the policy, Sanderson Robert had two other policies of insurance upon the same premises, then in full force; one issued by the New York Protection Iusurance Company, in his favor, for the sum of $1,500; and the other, by the Orleans Insurance Company, for the sum of $2,000; of which "he had given the defendant no notice; and had not caused notice of the same to be indorsed upon the policy issued by the defendant; and that the defendant had no other notice thereof."

The cause was submitted to the court, and it appearing upon the trial, that, at the time of issuing the policy, Robert had other insurance upon the premises (as averred in the defendant's answer), which was not indorsed upon, or otherwise mentioned in the policy, the plaintiff offered parol proof to show, that when the insurance was applied for by him, to the agent of defendant, he distinctly notified the agent that there was insurance already upon the premises to the amount of $3,500; and that when the policy was executed and delivered to him, he supposed the prior insurance was either mentioned in or indorsed upon the policy, but did not look to see; nor was he aware of the omission until after the loss had occurred. This testimony was objected to

but was received by the court, as going to prove a *waiver,* on the part of the defendant, of the condition; and upon the whole evidence in the case, the court found for the plaintiffs.   The case coming before the three judges, at general term, upon error, it was held that to entitle the plaintiffs to recover upon the policy, it was necessary to show a compliance with its conditions; and, as the condition required notice of prior insurance to be indorsed upon the policy, or mentioned in it, and in default thereof declared the policy void, to allow parol proof of notice to be received would be to dispense with an important provision of the contract, and completely nullify its purpose; that to apply the principle of *waiver*, in such a case, would be to set up a *parol* agreement made at the time of issuing the policy, dispensing with the necessity of indorsing the prior insurance upon it, in opposition to the *written* agreement of the parties, requiring such indorsement to be made as necessary to the validity of the policy; that, for this reason, the testimony was improperly received, and the judgment founded thereon erroneous; which decision is reported in vol. 1, page 217.  But it was also intimated, that if the action had been differently framed, addressing itself to the equitable consideration of the court, by presenting the case of an agreement between the parties for the indorsement of these prior insurances upon the policy, accompanied by an undertaking on the part of the defendant to make such indorsement, which, by the mutual mistake of the parties, or fraud of the defendant, was omitted, and asking for a reconstruction of the policy in this respect, or that the mistake might be corrected, the existence of such agreement and mistake might be shown by parol evidence; and, upon sufficient proof, the court, in the exercise of chancery powers, might correct such mistake, and then proceed to render judgment on the policy.

In pursuance of this intimation, the plaintiffs filed an amended petition, in which they set forth, that prior to the issuing of the policy sued upon, they had effected an insu-

rance upon part of the premises therein described, in the sum of $2,000, with the Orleans Insurance Company, and had also effected an insurance upon the residue of said premises, in the sum of $1,500, with the New York Protection Insurance Company, at their agencies in Cincinnati, amounting in all upon said premises to $3,500; "that at the time of making application (through their agent, said Robert), to the defendant, they (through said Robert) notified the defendant that there was other insurance then made by the agencies of said other named companies, for the sum of $3,500, as aforesaid, which notice was given for the purpose of being within the terms and provisions of the defendant's policy, and for the purpose of enabling the defendant to mention said notice in their said policy, or to indorse the same upon it; and the plaintiffs thereupon supposed and believed that the defendant would do so; and defendant thereupon executed and delivered said policy to the plaintiff, without being so indorsed with such notice, and without any mention therein of the same; and plaintiffs received and accepted the same, and adjusted and settled the premium therein, believing said policy to have been so drawn as to be in all respects complete and valid; that defendant failed to indorse or mention said notice in said policy; by means of which failure, the defendant now pretends said policy is void, and refuses to adjust the loss arising thereunder." Thereupon they ask that said indorsement be now ordered, as of the time when the same should have been made, and that plaintiffs may have judgment for the amount to which they are justly entitled under said policy.

To this amended petition the defendant answered, "denying that before the issuing of their policy, it received notice of the other insurances on the said premises, as claimed in said amended petition, or that notice of said other insurances was duly given by the plaintiffs to the defendant, for the purpose of being within the terms and provisions of the defendant's policy; and it also denies that it was the duty of the defendant to mention the notice afore-

said in said policy, or to indorse it thereon." And it also " denies that the plaintiffs performed all the conditions they were required to perform in relation to said policy."

Upon the pleadings as amended, the cause came on for trial before Judge Gholson, at special term, in May, 1857. A jury was impaneled to try the issues between the parties, who found a general verdict in favor of the plaintiffs for $4,670—subject to the opinion of the court on certain *special findings*, directed by the court, as follows :

1. That in the treaty or parol agreement between Robert and the agent of the defendant, prior to the execution of the policy by the defendant, it was one of the terms or matters intended to be put in writing, as a part of, or as an indorsement on the said policy, that there were other insurances on the same property covered by the policy.

2. That, in making out the policy of insurance, there was a mistake in not inserting or indorsing the fact or matter that there were other insurances; and that there was an acceptance of the policy under a mistake, as to there being no such insertion or indorsement.

3. That the two prior insurances mentioned in the pleadings were upon the same property, which was covered by the defendant's policy.

4. That the premium mentioned in defendant's policy was not paid in cash, but was charged to S. Robert, and is still unpaid.

5. That the policy sued on was assigned by Robert to plaintiffs on the 22d of January, 1851, with defendant's assent.

6. That the original insurance was effected by Robert as plaintiffs' agent, and for their benefit.

7. That the loss happened June 26th, 1851—not on the 31st of December, 1851. Robert commenced an action upon the policy for the same loss, for the benefit of the plaintiffs, in the superior court of Cincinnati, which was removed to the circuit court of the United States for the District of Ohio, and there discontinued on the 17th of September,

1853, by the voluntary act of the plaintiffs; and on the 19th day of said month, the present action was brought; and that the defendant neither assented to such discontinuance nor to the delay in bringing the present action.

Upon the rendition of this verdict, the defendant moved for a new trial, assigning for cause, 1. That the court erred in admitting improper evidence. 2. That the court erred in its charge to the jury, and in refusing to charge as requested. 3. That the verdict is against the law and the evidence; while the plaintiffs demanded judgment on the verdict.

These questions were reserved to general term for decision, and all the testimony exhibited on the trial was embodied in a bill for information; and another bill of exceptions was allowed on the trial, exhibiting the questions arising upon the 1st and 2d reasons assigned for a new trial.

*King, Anderson & Sage*, for plaintiffs.

*Lincoln, Smith & Warnock*, for defendant.

SPENCER, J., delivered the opinion of the court.

Nearly all the legal questions arising upon this case have been considered and disposed of by this court on its former hearing, and we shall not, therefore, be compelled to dwell upon them at great length—though it is, perhaps, proper to state, that whereas we were then divided in opinion upon one of the main points, we are now fully agreed upon all the matters to be decided.

The first inquiry we make is whether the general verdict, in connection with or apart from the special findings, is against the law and evidence.

There are and have been but four points of controversy between the parties:

The first relates to the interest of the plaintiffs in the policy, which was denied by the defendant. The jury have

found that the policy was taken out by Robert, as the agent and for the benefit of the plaintiffs, and was assigned by him to the plaintiffs, with the assent of the defendant. To this finding no objection has been made.

The second relates to the payment of the premium, which was denied by defendant to have been made, and who claimed, in consequence thereof, that the policy, agreeably to one of its conditions already quoted, never took effect. On this the jury have found, that the premium was not paid in cash, at the time of issuing the policy, but was charged to Robert, though it has never in fact been paid by him. The language of the condition, it will be observed, is that " no insurance shall be considered binding until the payment of the premium." On examining the policy we find, that it contains in express terms an acknowledgment of the payment and receipt of the premium. This acknowledgment (as we held before) " was made for the purpose of giving effect to the policy from the time of delivery, and must be held conclusive for that purpose." *N. Y. Central Insurance Co.* v. *National Protection Insurance Co.*, 20 Barb. 475, and cases cited; 1 Campb. 532; 3 Taunt. 493; 1 Sanf. S. C. 58; 1 Phil. on Ins. secs. 514–15; 2 ibid. 1849–1993--2116; 1 Marsh. Ins. 240. The policy having once taken effect, its condition was at an end, and the subsequent non-payment of the premium did not and could not avoid it, unless provided for by some other condition, of which there was none.

The third point of controversy relates to the time within which the present action was brought. It grows out of the condition of the policy, which declares that " all claims under it are barred, unless prosecuted within one year from the date of loss." The facts, as applicable to this branch of the defense, are that the insurance was effected by Robert for the plaintiff's benefit, and the policy assigned to them with the defendant's assent, before the loss happened; that within a year after the loss, an action was brought therefor in the name of Robert for the use of the plaintiffs, in the superior court of Cincinnati, which was subsequently re-

Wm. C. Fellowes et al. *v.* The Madison Insurance Co.

moved to the circuit court of the United States for the district of Ohio, where it was prosecuted until the 17th of September, 1853, on which day it was discontinued by the plaintiffs without the consent of the defendant; and that on the 19th of the same month, the present action was brought, the defendant not consenting to such delay. The present action not having been brought by the plaintiffs within the year prescribed, it is claimed by the defendant that it is absolutely barred by the condition referred to; while on the part of the plaintiffs it is claimed that the condition has been substantially if not literally complied with, and if not, the condition is void as against public policy. Upon a former examination of this point in the case, we declined expressing an opinion upon the validity of this condition. Further investigation has removed all hesitation and doubt, and led us to the conclusion that the provision is both lawful and useful. The idea that such a condition if allowed would virtually oust the courts of their jurisdiction, as urged by Judge McLean in *French* v. *The Lafayette Insurance Co.*, 5 McLean, 461, is plausible and imposing, and if such were the object of the parties, would perhaps be a conclusive objection against it. But to limit a time within which actions should be brought has always been deemed wise and politic, and accordingly statutes of limitation are of constant occurrence. What shall be regarded as a reasonable time in any particular case, or class of cases, will depend upon circumstances. It should in any event allow sufficient opportunity to a party to investigate his claim, and prepare for the controversy. The urgency of circumstances is, in an individual case, best known to the parties themselves, and they should be allowed to judge accordingly. If it be lawful to require proof of loss to be furnished to the company itself, within sixty days, or any other limited time after the loss occurs, by the condition upon which the liability of the company is to depend, it is equally lawful and proper to require such proof to be furnished in a court of justice, within a reasonable limited time,

as a condition of its liability. And that such limitations are peculiarly appropriate to actions upon policies of insurance, no one will pretend to deny. It is unnecessary to enlarge upon the subject. That such a limitation is binding, and will be respected in courts of justice, has been decided in several well considered cases, to which we give our hearty approval. *Cray* v. *The Hartford Fire Insurance Co.,* 1 Blatchf. 280; *Williams* v. *The Vermont Mutual Fire Insurance Co.,* 20 Verm. 222; *Wilson* v. *The Ætna Insurance Co.,* 1 Williams, 102.

But, secondly, has the condition been complied with? A proper action was brought by the plaintiffs, in the name of Robert, for their use, to recover for this loss, within the time required. It was prosecuted in good faith, until discontinued for the purpose of bringing the present action. Although the nominal plaintiffs in the two actions are different, the persons beneficially interested and prosecuting are the same, and the whole may justly be regarded as the prosecution of the same claim. As said, on a former occasion, we are all perfectly satisfied, that this provision of the policy is reasonably complied with, by the *bona fide* institution of a suit, within the time limited, for the purpose of enforcing the claim; and if the party should afterward discover that he has brought his suit before the wrong *forum,* as if he had gone into a court of law when he should have gone into equity, or in an improper mode, as if he had brought covenant instead of assumpsit, he may abandon the same, instituting at once a new action, and thereby make a continuous claim in prosecution of his right, without abandoning or forfeiting such right altogether. The language of this condition is that of the defendant; and its terms being restrictive of common right, must be construed *strictly,* and taken most strongly against the defendant. It does not require that the same prosecution, that is the same action, once begun, shall continue until its completion, and when once determined, whether by *non-suit* or otherwise, the right shall

be wholly barred; but that the right itself, or *claim* shall be prosecuted within the year, and continuously made, whether in the same or a different action, is not material. The prosecution of a claim means nothing more than the following of it up by action; and should be continuously made without serious interruption. This construction answers the terms of the condition; an1 it saves to the company all the advantages intended to be secured to it, by the requisition of a prompt suit, on the part of the insured, that is, *notice* to prepare their defense before the evidence of it may be lost; while at the same time it saves the insured from the casualties which must frequently arise from being compelled to bring a hasty action.

The language of this condition differs essentially from that used in the cases just referred to: In *Williams* v. *The Vermont Mutual Fire Insurance Company*, 20 Verm. 222, the restriction to sue was embodied in the charter itself. It required the party aggrieved "to bring his *action* against the company, at the *next* court, to be holden in, and for said county, and not *afterward*, unless said court shall be holden within sixty days after refusal to allow the loss, if holden within sixty days, then at the next court holden in said county thereafter." This was held to apply to the action in which the *recovery* was sought. So in the other three cases, which are founded upon the same identical form of policy, they turned upon the proper construction of the language used, which provided, not, as here, that the *claim* "should be barred unless *prosecuted* within a year," but that "no suit, or action of any kind, upon the policies, shall be sustaine1 in any court of law or chancery, unless *said suit* or action shall be commenced within the term of twelve months next after the cause of action shall accrue; and in case any such suit or action shall be commenced after the expiration, etc., the lapse of time shall be taken and deemed conclusive evidence against the validity of the claim, thereby so attempted to be enforced." In commenting upon this provision, in the case of *Wilson* v. *The Ætna Insurance Company*, 1 Wil-

liams, 102, Judge Redfield says: "This stipulation is too explicit to allow of any escape from its import by construction. It is not that *an action* shall be commenced within twelve months; but that no *recovery* shall be had, unless such action is commenced within twelve months after the loss. *Such action* can only signify *the action* in which the recovery is sought," etc. "And there is no provision for any exception on account of the *failure* of any such actions; and without such provision in the contract, the court can not import one." And the judge intimates, that in such a case, even *fraud* would not be a ground of relief.

As the condition, however, in the present case, only requires the claim to be prosecuted within the year, an action *fairly* brought, with a view to ascertain and enforce the right, answers the *terms* of the condition; and though discontinued voluntarily, without bad faith, if the claim be promptly prosecuted in another action, it is not barred.

The fourth point of controversy relates to that condition of the policy which declares that "in case of any other insurance upon the property, not notified to said company, and mentioned in or indorsed upon this instrument, then this policy shall be void and of no effect." The importance of this condition, and the necessity of complying with it on the part of the insured, were considered by this court, at great length, in a former hearing of the case; and the conclusions then arrived at, by a majority of the court, are sanctioned and confirmed by us all, and have been sustained by fresh authority. They were, that in an action on the policy no other evidence than that provided for in the contract itself could be received to show that notice of prior or subsequent insurance had been given; or to prove a *waiver* of the condition itself, made at the time of delivering the instrument. The cases then cited, as directly in point, were *Carpenter* v. *The Providence Washington Insurance Company*, 16 Pet. 510; and *Barret et al.* v. *The Union Mutual Fire Insurance Company*, 7 Cush. 175; and as covering the

principle involved, *Alston* v. *The Mechanics Mutual Insurance Company, of Troy,* 1 Hill, 510; *Kennedy* v. *The St. Lawrence County Mutual Insurance Company,* 10 Barb. 285; *Sheldon & Co.* v. *The Protection Insurance Company,* 22 Conn. 235; and *The Glendale Manufacturing Company* v. *The Protection Insurance Company,* 21 Conn. 19. Since then has been published the case of *The Worcester Bank* v. *The Hartford Fire Insurance Company,* 11 Cush. 265, in which it was held, that where by the terms of the policy, it was required that notice of other insurances should be entered on the books of the company, or on the policy itself, otherwise the policy should become void, and such entry was not in fact made, the plaintiff could not recover, although he had given such notice to the agent of the company, with directions to enter it upon the company's books, and the agent had promised, but failed to do so. Such being the clear rule at law, equity would not interpose, unless to enforce specifically an agreement on the part of the defendant to cause such notice to be indorsed upon or mentioned in the policy, or on the ground of fraud, accident or mistake.

It may be observed that, in the present case, the plaintiffs in their petition aver that, at the time of making application for insurance, they notified the defendant of prior insurances upon the property in the sum of $3,500, " for the purpose of enabling the defendant to mention said notice in their said policy, or to indorse the same upon it; and the plaintiffs thereupon supposed and believed that the defendant would do so; and defendant thereupon executed and delivered said policy to the plaintiffs, without any mention therein or upon the same; and the plaintiffs received said policy, and adjusted the premium, believing it to be in all respects complete and valid." What reason the plaintiffs had for such supposition and belief is not set forth—whether because of an actual agreement on the part of defendant, or an agreement implied from the usages of insurers to mention such notice in or upon their policies. The defendant in

its answer denies that notice of other insurance was given, or was given for the purpose claimed by plaintiffs, or that it was the duty of the defendant to mention such notice in or upon the policy. Nor have the jury, in their special finding on the point, unequivocally asserted that there was any such agreement on the part of the defendant, or any usage from which it might be inferred. They have declared (it is true) that in the treaty or agreement between the agents of the parties, it was one of the terms or matters intended to be put in writing, as a part of or as an indorsement on the policy, that there were other insurances upon the property, etc., but it is not found that the defendant agreed or undertook to do it, or that the intention was mutual—that is the intention of both parties. So it is found that "in making out the policy there was a mistake in not inserting in, or indorsing upon it, the fact of there being other insurances upon the property; and that the policy was accepted under a mistake as to there being no such insertion or indorsement." But whether such mistake was an omission of duty imposed upon the defendant, and if so, whether by operation of law, of usage, or of contract, is not set forth. Giving this finding a strict construction, it may be questioned whether, if it stood alone, enough appears to warrant a judgment in favor of either party upon it. Giving it however, that construction which would go to sustain the general verdict, and how does the entire verdict comport with the evidence. We premise here that this condition of the policy, so far as it imposes any duty in this regard on either of the parties, imposes it upon the insured, and not upon the underwriters. It is a condition precedent to their right of recovery; and therefore to be performed by them—or at least it becomes their duty to see that it is performed, and if not, to cause it be done. It may possibly admit of some question whether, if this duty be imposed upon them by the terms of the written contract, it can be cast upon the other party by a concurrent parol agreement, so as to shield the insured from responsibility for its failure. And it seems to us even more than questionable whether such

an agreement made with a mere agent of the defendant can have that effect—whether it is not beyond the scope of his authority, of which the other party has notice from the very terms of the policy itself. Conceding this fully however, it should be made out by clear proof that the duty was thus cast upon the company either by express agreement, or by general usage among underwriters. So far as any such usage is concerned, there is not a particle of proof in the case to support it. The matter therefore stands entirely upon agreement between the parties. Nor upon this point is there any proof of an express agreement on the part of defendant, or its agent, to cause a memorandum of this prior insurance to be made upon the policy. The only testimony introduced upon the subject, on the part of the plaintiffs, is that of Robert himself, and of Mr. Hall, the defendant's agent. Robert says the application was verbal, and only once made; that it was made to Hall just as he (Hall) was going upon change; that he stated to Hall, he was directed to insure $7,000 on the building; that he had obtained $3,500 in other offices, and wished Hall to take the balance; that he had taken $3,500 with Frost & Foster (who represented two companies); that Mr. Hall accepted the application, with the distinct understanding that there was other insurance; that witness did not recollect of having insured with defendant before, but had insured a great deal in other offices. On cross-examination, he states that Hall was just leaving the office when the application was made; that he directed Mr. Chew to prepare a policy, and then left; does not remember of making a written application, but, on his being shown one says it is drawn up by Hall and signed by him, in these words and figures:

584                              No. 210.

| | |
|---|---|
| $3,500. | Insurance in the sum of $3,500 on building commonly known |
| 3 per cent. | as E. Wilson's pork house. |
| $105.00. | To be insured on one year from date. |

Cincinnati, January 13, 1851.

S. Robert.

Hall testifies that the application was verbal; that Robert said that he wanted $7,000, in all; that he had already obtained $3,500, and he wanted $3,500 more; that is all that took place.   He did not remember whether Robert told him where he had made the other insurance, and did not remember whether he had made any agreement as to other insurance; that the policy was filled up by Mr. Chew, his clerk; that there was no fixed practice in the office about the mode of indorsing other insurance; that the policy was made out by Mr. Chew from a memorandum left with him by witness for the purpose; but did not remember any of the directions in the memorandum respecting former insurance.   On cross-examination, he says the memorandum was as follows: "Mr. Robert wants $3,500 insurance on Wilson's pork house, and that $3,500 has been insured elsewhere;" that the application of Robert, as above set forth, was in the company's application book, and was signed by Robert, but it was not handed to Mr. Chew to make the policy by; nor does witness know when it was made; that it was the usage of the office to require mention of former insurance in the application itself, and for the applicant to sign it, and that such was the custom in the city generally. This is all the testimony on the part of plaintiffs.   Mr. Chew testifies that he has no recollection on the subject; but that the policy was made out from the application; and it in fact so appears from the policy itself.   This proof falls very far short of showing an undertaking on the part of the company to cause this prior insurance to be noticed upon the policy, or even of a request from Robert that it might be so noticed.   The only fact from which it can be inferred that such was Robert's purpose, understood by the company's agent, was the mere statement that prior insurance did exist in the sum of $3,500.   Now it was manifestly proper and natural that a circumstance which so materially affected the question of risk, as prior insurance, should have been stated by Robert to Hall, for the purpose of enabling Mr. Hall, in the first interview, to determine whether he

would or would not take the risk; and that when he had expressed his assent, a written application should be made in form, detailing the particulars to be inserted in the policy, agreeably to general usage. He must be presumed to be aware of the custom to make out policies from the application; and if he had intended that mention should be made, upon the policy, of other insurances, he should have stated in his application that there were other insurances, and the particulars thereof, so as to enable the agent properly to mention them on the policy. Not so here. The written application of Robert, from which the policy was made out, contains no statement whatever of prior insurance; and the verbal statement made by him did not contain such particulars as would have enabled the agent to express them on the policy, if he had seen fit, without further inquiry. Should the omission be held fatal in the present case, we hazard nothing in saying that, treating Hall as Robert's agent, no jury would hold him liable to Robert for neglect of directions. Circumstances have been introduced in defense, going to show still further the alleged equity of the plaintiffs. It appears that Robert, when he received the policy, made no examination to see whether its conditions had been complied with on his part, nor was he prevented from so doing by any act of the defendant. And subsequently, when advised that the policy was imperfect in another particular, and he called upon the agent to have it corrected, he still took no notice of the omission referred to. It may be very questionable, under such circumstances, whether the mistake of Robert, in this case, was not voluntary; and that, if he had not, he ought to have had knowledge that he had not complied with the condition of the policy; and if so, ought not to have the aid of equity to relieve him from his own neglect. At all events, it does not induce a high degree of favor in straining testimony to make out a case which it does not well warrant.

We are not satisfied, then, with this verdict. It is not

sustained by the evidence, nor consistent with law; and it must be set aside, and a new trial granted.

Cause remanded for a new trial.