DOBYNS v. THE BAY STATE BENEFICIARY ASSOCIATION, *Appellant*.

Division Two, May 17, 1898.

1. **Life Insurance:** CONTRACT. The contract in this case which is set out in the statement, is held to be a contract of life insurance under the statutes of this State.

2. ———: PRIMA FACIE CASE. In a suit on a life insurance policy, which acknowledges the receipt of all premiums due thereon for six months, the introduction in evidence of such policy and proof of the death of the insured within that period, make out a *prima facie* case for plaintiff.

3. ———: RECEIPT IN POLICY: ESTOPPEL. Where an insurance company has issued and delivered its policy which acknowledges receipt of the payment of premiums therein, the company is estopped from averring or proving the non-payment of the premiums for the purpose of denying the existence of the contract of insurance. Such a contract is binding on the company for the length of time covered by such receipt, whether the premiums were paid or not.

4. ———: ———: EVIDENCE. An insurance company can not acknowledge in its policy payment of premiums, and then deny that the policy is a binding contract on the company simply because they were not in fact paid. The receipt is no bar to an action for the unpaid premium, but it is conclusive as to a consideration for the policy. Such contracts are distinguishable from that class of cases in which the insured gives his note for the unpaid premium, and agrees that if it is not paid at maturity the policy shall become void. Nor does the doctrine conflict with the principle of forfeiture upon failure to pay assessments in fraternal society insurance, or assessment plan insurance.

5. **Practice**: TRIAL TO JUDGE: THEORY OF CASE. In actions at law, where there is conflicting evidence and a jury is waived, the trial court should give and refuse declarations of law in order to enable the appellate court to see upon what theory it proceeded and to understand its finding of the facts, or make its findings under section 2135, Revised Statutes 1889.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*George Robertson* for appellant.

(1) The letter of Dobyns to the defendant is conclusive that his certificate had lapsed and was not in force at the time of his death. The correct doctrine is that statements made by the insured as to the cause of his suspension are competent evidence to prove the fact of the suspension. Bacon's Ben. Soc. and Life Ins., sec. 460; *Life Ass'n v. Winn*, 33 S. W. Rep. 1045; *Chartrand v. Brace*, 16 Col. 19; *Aiken v. Mass. Ben. Ass'n*, 13 N. Y. Sup. 579; *Wells v. Mut. Ben. Ass'n*, 126 Mo. 630; *Masonic, Etc., v. Bunch*, 109 Mo. 560; *Stewart v. Sup. Coun., Etc.*, 36 Mo. App. 319; *Grand Lodge v. Elsner*, 26 Mo. App. 118. (2) The officers of the defendant could not waive the timely payment of the assessments. Bacon's Ben. Soc. and Life Ins., secs. 431 and 431a; *Ins. Co. v. Rough*, 97 Pa. St. 415; Bliss on Life Ins. [2 Ed.], sec. 429; *Harvey v. Grand Lodge*, 50 Mo. App. 472.

*S. W. Bickley* for respondent.

(1) Appellant is not a benevolent or fraternal society on the lodge system, but is a life insurance association or organization partaking of the "old line" character, managed by its president, secretary and board of directors, and doing business on the assess-

ment plan, as provided in article III, chapter 89, Revised Statutes 1889. For that reason, the numerous "lodge room" cases, cited by appellant in regard to default, waiver, etc., do not apply in this case. *Hanford v. Mass. Ben. Ass'n*, 122 Mo. 50; R. S. 1889, secs. 5860, 5872; *Lyon v. Supreme Assembly*, 26 N. E. Rep. 236. (2) Appellant is bound by the acknowledgments in its policy. Respondent's husband received his policy directly from the home office, by due course of mail; and rule fourth of said policy, in regard to waiver by agent, does not apply here. The amount receipted for on face of the policy, $34.20, carried and kept said policy in full force for six months, which period expired six weeks after death of the assured, and appellant is not allowed after death of policy holder, to deny its own written acknowledgment of money received. Even if Dobyns were living, appellant could deny receipt of said money for the purpose of recovery only, and never for the purpose of avoiding the policy. R. S. 1889, sec. 8918; *Meyer v. Thieman*, 90 Mo. 433; *Chapman v. Daugherty*, 87 Mo. 617; *Jones v. Burden*, 56 App. 199; *Scott v. Riley*, 49 App. 251; *Reynolds v. Reynolds*, 45 App. 622; 118 Mo. 670; 113 Mo. 387; 111 Mo. 322; 108 Mo. 231; 25 Mo. App. 170; 59 Mo. App. 475; 44 Mo. App. 657; 43 Mo. App. 136; 42 Mo. App. 297. (3) One who contracts with the authorized agent of a corporation is not a competent witness as to such contract, or to the admissions and declarations of the agent after the latter's death. The converse is also true. *Banking House v. Rood*, 132 Mo. 256; *Williams v. Edwards*, 94 Mo. 447. (4) Construction of policy should be in favor of assured. An insurance company makes its own conditions and they will be interpreted most strongly against them. *Renshaw v. Ins. Co.*, 103 Mo. 611; *Hale v. Ins. Co.*, 46 Mo.

App. 509; *LaForce v. Ins. Co.*, 43 Mo. App. 530. (5) Suppose the first payment on policy was never made, the company is still without a defense. If they wanted to avoid the policy, and if its terms so permitted, they were bound to do so promptly and by positive act during Mr. Dobyns' lifetime. The law requires that "they should take one ground or the other." "The continuing power of declaring a forfeiture, prolonged through an indefinite time, to be exercised or not as self-interest dictates, it is obviously the policy of the law not to favor. *Gordecke v. Ins. Co.*, 30 Mo. App. 609; *Gardner v. Ins. Co.*, 58 Mo. App. 611; *Rothchild v. Ins. Co.*, 74 Mo. 43; 1 Phillips on Ins., sec. 109; May on Ins., sec. 69; *Jackson v. Ins. Co.*, 27 Mo. App. 73; *McAllister v. Ins. Co.*, 101 Mass. 561; May on Ins., sec. 67. (6) The application in this case requires that the "first premium must accompany the application," but the policy nowhere provides that the policy shall be void if the first payment is not made. But even if the policy had provided that the same should be void if the first premium were not paid at or before delivery—they could waive that requirement, and having done so, sue for the premium if the policy holder refused to pay. *Clark v. Columbus Ins.*, 19 Mo. 368; *Ins. Co. v. Smith*, 73 Mo. 368; *Ins. Co. v. Stone*, 42 Mo. App. 386; 2 Marshal on Ins., sec. 335; *Sheldon v. Ins. Co.*, 26 N.Y. 460; 1 Phillips on Ins., sec. 512; *Jackson v. Railroad*, 54 Mo. App. 637; *Miller v. Ins. Co.*, 12 Wall. 285; *Goit v. Ins. Co.*, 25 Barb. 189.

GANTT, P. J.—This is an action upon a policy of life insurance issued by the defendant to Benjamin F. Dobyns for the benefit of his wife, the plaintiff, on the seventh day of April, 1894, the premiums to be paid semi-annually in advance and to amount to $34.20 each. The policy is numbered 31109, and insured the

life of said B. F. Dobyns for $3,000.    The terms of the policy necessary to be quoted at this time are as follows:

"No. 31109.                        Amount, $3,000.
"THE BAY STATE BENEFICIARY ASSOCIATION,
"Westfield, Massachusetts,
"Age, 48,

"*In consideration of the payment of thirty-four dollars and twenty cents by Benjamin F. Dobyns, of Mexico, Missouri, county of Audrain, the receipt of which is hereby acknowledged, and* of the statements of the certificate member in his application for membership in this association, a copy of which application is hereto annexed, and the agreement on the part of the said Dobyns to accept the following conditions and rules as part of this contract between himself and said association, hereby constitutes the said Dobyns a benefit member of said association, and *agrees to pay in ninety days after there shall have been furnished to said association satisfactory proof of a valid claim under this contract,* consequent upon the death of said member from any cause not enumerated in the 6th and 7th paragraphs of the conditions and rules hereinafter contained, to Willentina B. Dobyns (wife) if living, if not to the executors or administrators of said member in trust, however, for and to be forthwith paid over to his heirs at law the sum of three thousand dollars."

The fifth clause in said policy is as follows:

"*Fifth*.    This contract is a bi-monthly term insurance, renewable at the option of the member before expiration, upon payment of mortuary premiums and dues at the time and in the manner herein provided. The insured shall pay under this contract in advance at the office of the association in Westfield, Mass., bi-monthly on the first business day in January, March, May, July, September and November of each and every

year respectively, the sum specified in the table of rates printed upon the back hereof, for his age at entry unless the board of directors shall by special notice require a different amount. Payment may be made in advance in accordance with the annual, *semi-annual*, quarterly or bi-monthly table, and when so made shall be applied to the bi-monthly renewal of this contract. The expense fund shall be provided for as follows, viz.: Three dollars per one thousand dollars insured of the money so received shall be appropriated and used as a part of the expense fund, and not exceeding one thirtieth of one per cent bi-monthly on the amount insured, which fund is at the sole disposal of the officers of the association, and the balance after the first year can be used only for the payment of death claims and for the emergency fund. If any payment herein provided for is not received within 30 days for each of the above named dates such non-payment shall be conclusive evidence that the party has decided to terminate his connection with the association, which connection shall terminate thereupon, and the party's contract with the association shall lapse and be void, and all rights thereunder be forfeited to the association. Said party may, however, if in good health, be reinstated by the officers of the association upon such conditions as they may require. If the mortality experience of the association shall require any variation from said rates in any call, due notice will be given. Any variation in excess of said rates may be taken from the emergency fund."

The insured, Benjamin F. Dobyns, died on the tenth day of August, 1894. Proofs of death as required by the policy were made in due time, but the company declined to pay on the ground that the insured had not paid his first semi-annual premium or assessment due May 1, 1894. The defendant is a foreign insurance company doing business in this State within the mean-

ing of article III, chapter 89, Revised Statutes 1889. By virtue of sections 5860 and 5862 its contract for a benefit renders it "a contract of insurance upon the assessment plan," in contradistinction to the benefit in fraternal associations under our laws.

Plaintiff obtained judgment in the circuit court and defendant appealed.    The defendant relies upon two grounds for reversal, to wit, the refusal of its declarations of law, and that the verdict was not supported by the evidence.

The *petition* alleged the incorporation of defendant under the laws of Massachusetts on the second day of June, 1881; its authority to write and issue policies of life insurance and to insure the lives of persons becoming members of said association; its authority to do business in this State; the issuance to B. F. Dobyns of the policy number 31,109, whereby it agreed with said B. F. Dobyns to pay plaintiff $3,000, in the event of the death of said Dobyns, ninety days after the receipt of the proof of such death; the payment of the semi-annual payment of $34.20 required by said policy upon the receipt of said policy on the seventh day of April, 1894; the death of said B. F. Dobyns on the tenth day of August, 1894, while said policy was in full force and effect, the making of the proofs of death as required by the policy; the filing of the policy; and concluded with the general averment that said B. F. Dobyns and plaintiff had fully complied with all their covenants in the premises, and that defendant had failed and refused to pay plaintiff said $3,000 or any part thereof, and prayed judgment.    Defendant in its amended *answer*, filed after the proofs were all in, admitted the issuing of the policy sued on, and expressly pleaded the fifth clause of the policy heretofore set out in the accompanying statement, and then pleads as follows:    "Defendant

further says that at the time of issuing the first certificate aforesaid, the age of the said B. F. Dobyns was forty-eight years, and his bi-monthly payments thereon for the remainder of his life would be $11.40; that said bi-monthly payments were also by the terms of the renewed certificate likewise required to be paid on said renewed certificate, and the said Benjamin F. Dobyns, under the terms of the fifth provision quoted aforesaid, *elected to pay said bi-monthly payment semi-annually in advance; that thereby there became due on the first day of May, 1894, under the terms of said certificate, the sum of $34.20 as the first semi-annual payment due under said renewed policy*, of which payment so due the defendant duly notified said B. F. Dobyns, *but the said B. F. Dobyns failed and neglected to pay said sum of $34.20 within thirty days after the date aforesaid, whereby said benefit certificate became void and all his rights thereunder were forfeited.* Defendant, further answering, says that the said B. F. Dobyns at no time after the delivery of said certificate to him made any bi-monthly or other payments thereon to defendant, and defendant at no time received any sum of money whatever on account of said certificate, wherefore it prays to be hence discharged with its costs in this behalf expended.''

The *reply* denied that said B. F. Dobyns was in default on his assessment on premiums, and averred that the defendant had either received the advance premium of $34.20, or had waived it, and averred plaintiff's ignorance as to which alternative was true, but offered, if the court found it was waived, to allow defendant credit therefor with interest.

I.    Counsel have discussed various propositions of law in their briefs and oral argument, but after all the issue is single and simple, and consists in the plaintiff's averment that the insured paid the semi-annual premium or assessment on the receipt of his policy on the

Dobyns v. Bay State Ben. Ass'n.

seventh day of April, 1894, and the defendant's denial of this statement and its insistence that by reason of his failure to do so, the certificate or policy lapsed and became void and no recovery can be had thereon. The plaintiff is right in asserting that the contract in this case is a contract of life insurance under the statutes of this State. *Hanford v. Ben. Ass'n*, 122 Mo. 50; R. S. 1889, secs. 5860 and 5862.

The contention of the defendant is two fold: "*First*, that plaintiff failed to establish a *prima facie* case of the payment of the semi-annual premium, which it insists is a condition precedent to a recovery by her; and, *secondly*, that granting her a *prima facie* case, it had rebutted it so conclusively that the court should have declared as a matter of law that plaintiff could not recover on the whole case.

To maintain her right to recover on the policy or certificate, plaintiff offered and read in evidence the policy itself and the application of deceased therefor without objection. It will be observed that the policy duly executed by the president and secretary of the company acknowledges the receipt of $34.20 from Benjamin F. Dobyns. This was supplemented by proofs of death as required by the policy, and thereupon plaintiff rested.

To rebut the clear *prima facie* case thus made defendant offered and read over the objection of plaintiff two letters of Mr. Dobyns in these words:

"MEXICO, Mo., August 2nd, 1894.

"*C. M. Goodnow, Esq., for Bay State Beneficiary Association, Westfield, Mass.*—DEAR SIR: I keep the other list, as there is none to collect from, and wait to hear from you in regard to my payment. I was somewhat angry for what Mr. Guerard told me that the payment would not be raised and the same annual payment would be all that I had to pay. I wish to pay

my assessment and as soon as I hear from you will send check for the amount, and hope it will be satisfactory to the company.    Yours truly,    B. F. DOBYNS.''

To the introduction of which letter plaintiff objected.    Defendant next offers letter dated May 21, 1894, which is admitted to be in the signature of the deceased, and is as follows:

"*C. M. Goodnow, Esq., for Bay State Beneficiary Association, Westfield, Mass.*—DEAR SIR:    No 31109 received.    I write to you to find out just exactly how much I have to pay per year, as I see that you state $3, $1,000 annually, and not exceeding 1-30 of one per cent bi-monthly of the amount insured for expenses. Please state to me how much it will cost me per year, and whether the assessment will ever be raised higher than the amount is now, $34.20.    It was my understanding that the price, $34.20, would never be higher and and no other expense to me.    I do not understand is the reason why I write for information.    Let me hear from you.    Yours truly,    B. F. DOBYNS.''

To the introduction of these letters plaintiff at the time objected because it was not competent for defendant to deny the validity of the contract of insurance, by proving the premiums had not been paid after having issued the policy acknowledging its receipt.    Defendant then offered the deposition of B. E. Guerard, the agent of defendant at the time plaintiff's husband surrendered his first certificate or policy in the company, and agreed to take the policy in suit, to prove that Mr. Dobyns did not pay him the advance payment of $34.20 on this policy.    He testified he did not, but on cross-examination he admitted that at the same time he procured Mr. Dobyns to make this change.    He also induced three other gentlemen living in Mexico to exchange their old certificates for this form and they each paid him the advance premium.    He also stated

he had written Mr. Bickley, counsel for plaintiff, that he did not remember whether anything was paid by Mr. Dobyns at the time of its issue. An exhibit "E." attached to Guerard's deposition was also read in evidence to show that Goodnow, the treasurer, on May 1, 1894, notified Mr. Dobyns that his semi-annual assessment was due and must be paid prior to June 1 or his policy would lapse. Plaintiff objected to the deposition and exhibit because Dobyns was dead and his policy could not now be destroyed by proving that Guerard did not receive the premium. Here defendant rested.

Plaintiff then introduced quite a lengthy correspondence between Mr. Bickley, attorney for Mrs. Dobyns, and the secretary and treasurer of the company. On August 24, 1894, Goodnow, the treasurer, notified Mr. Bickley that Mr. Dobyns "had allowed his policy No. 31109 to lapse by the non-payment of a call due June 1st, 1894." On August 31, Goodnow wrote Mr. Bickley in answer to inquiry of August 28, that "Mr. Dobyns' June call by the non-payment of which his policy lapsed was $11.40." There was also evidence that an error had been committed in regard to call on Mr. Wilkins and others, but the evidence was immaterial, and does not affect the merits of the case. At the conclusion of the case the defendant asked the following instructions, which the court refused, and defendant excepted:

"1. The court declares that upon the evidence submitted in this cause the plaintiff is not entitled to recover.

"2. If the court sitting as a jury finds that the assured, B. F. Dobyns, failed to pay the amount due as bi-monthly assessment under the certificate sued upon within thirty days after the same became due,

then said certificate lapsed and became void and no recovery can be had thereon.

"3. If the court sitting as a jury believes, as alleged in the petition, that the sum of thirty four dollars and twenty cents, which amount was the estimated sum of the first semi-annual payment required to be made on said policy of $3,000 to keep and maintain the same in full force for a period of three bi-monthly terms as stipulated and provided by the regulations, rules and conditions thereof, was required to be paid 'in advance' as alleged in said petition and was not so paid, as alleged, then the plaintiff can not recover.

"4. If the court believes, from the evidence, that under the terms of the contract entered into between the defendant company and said B. F. Dobyns, a semi-annual premium of $34.20, being the amount of three bi-monthly payments of $11.40, became due on May 1, 1894, that a notice dated May 1, 1894, being Exhibit E, annexed by the plaintiff to the deposition of B. E. Guerard was received by said B. F. Dobyns from defendant, calling for such payment within thirty days after said date to maintain said policy in force, and that said amount was not paid within said thirty days or at any time, then the plaintiff can not recover.

"5. The court declares the law to be, that there is no evidence of any waiver of payments going from the deceased, B. F. Dobyns, to the defendant, and if the court shall find that at the time of the death of said B. F. Dobyns there were any payments or any payment due and unpaid under said benefit certificate, then the plaintiff is not entitled to recover and the verdict must be for the defendant.

"6. The court declares the law to be that under the benefit certificate read in evidence by plaintiff and under the pleadings, there can be no such thing as waiver of payments or any payment by the defendant

or any of its officers; and if the court, sitting as a jury, *finds that any payment was. past due and unpaid at the time of the death of B. F. Dobyns, then the verdict should be for the defendant.*"

The defendant's demurrer to plaintiff's case in chief was properly overruled. The policy, and the acknowledgment therein of the semi-annual premiums of $34.20, by the company, and the proof of death as required, made a *prima facie* case.

But the contention of defendant is that Mr. Dobyns never paid the advance premium, and hence the policy lapsed or never became a binding obligation on the company. The instructions were asked with a view to this failure to pay the advance premium. As this case was tried to the court without a jury and the court found for the plaintiff, the plaintiff has not appealed, but it is entirely proper to note in considering defendant's appeal that plaintiff objected all along to the proof tending to prove the advance premium was not paid. If that evidence was not competent then defendant has no ground of complaint. So that the all-controlling question in this case is, can the defendant defeat plaintiff's recovery by proving that as a matter of fact Mr. Dobyns never paid the semi-annual assessment or premium, notwithstanding the formal acknowledgment of payment thereof in the policy or certificate? Upon authority, the analogies of the law and reasons of sound public policy, we think not. Keeping in view the character of the insurance, we think the courts have settled the effect of the receipt in the body of this policy and so far as they have spoken have conclusively estopped the defendant from averring or proving the non-payment of the premium for the purpose of denying the existence of the contract of insurance. If this contract ever existed it was good for six months from April 7,

1894, and hence was operative when Mr. Dobyns died on August 10, 1894.

In *Basch v. Ins. Co.*, 35 N. J. Law, 429, a stipulation in the policy provided "this company shall not be liable by virtue of this policy or any renewal thereof until the premium therefor be actually paid this company." The nonpayment of the premium was not denied. Chief Justice BEASELY, for the court, said: "It is very clear that this action must fail altogether, if the fact that the premium for the insurance was not paid before the loss, is *competent evidence* in the case. The only question then is whether the company can be permitted to show, under the circumstances of the case, the failure of the plaintiff to pay the premium anterior to the fire in compliance with the condition of the policy. This policy of insurance, executed by the president and secretary of the company, contains a formal acknowledgment of the payment of the premium in question, and in my opinion this should prevent the defendant from averring or showing nonpayment for the purpose of denying that the contract ever had any legal existence. What does this receipt in its connection with the delivery of the instrument import, if it does not mean that the payment of the premium is conclusively admitted to the extent that such payment is necessary to give vitality to the contract? Unless this be its meaning it serves no legal office, for it does not mean that the money has been actually received. It is true that there is an express declaration that the policy is to have no effect until the premium shall have been paid, but in this same instrument is an equally express statement that the act on which the contract is to become efficacious has been done. . . . The usual legal rule is that a receipt is only *prima facie* evidence of payment, and may be explained, but this rule does not apply when

the question involved is not only as to the fact of payment but as to the existence of rights springing out of the contract. With a view of defeating such rights, the party giving the receipt can not contradict it."

Chancellor KENT, in his commentaries, says that "the receipt of the premium in the policy is conclusive evidence of payment and binds the insurer unless there be fraud on the part of the insured." 3 Kent's Com., *p. 260. The Supreme Court of Illinois, in *Ins. Co. v. Wolf*, 37 Ill. 354; *Ins. Co. v. Fennell*, 49 Ill. 180, and *Ins. Co. v. Anderson*, 77 Ill. 384, holds that "insurance companies, on the ground of public policy, will be estopped from proving, for the purpose of avoiding the contract, that the premium acknowledged in the policy to have been paid, was not in fact paid. To the same effect see *Fellowes v. Ins. Co.*, 2 Disney (Ohio),128; *Ins. Co. v. Ins. Co.*, 20 Barb. 475; *Dalzell v. Mair*, 1 Camp. 532; *Foy v. Bell*, 3 Taunton, 492; 1 Phillips on Ins. secs. 514, 515; 1 Marshall on Ins., p. 335. These decisions are in harmony with the rulings of this court and the great current authority in the United States, that while for some purposes parol evidence is admissible to show the real consideration in a deed, it is not permitted by parol "to so vary or *control the operative words of the deed as to defeat the* conveyance." *McConnell v. Brayner*, 63 Mo. 461; *Hollocher v. Hollocher*, 62 Mo. 267.

In the reporter's note to *Dalzell v. Mair*, 1 Camp. 532, it is said the custom of inserting the acknowledgment of the receipt of the premium in the policy grew out of a purpose to preclude the necessity of proving it when a loss happens and to prevent the insurance companies from objecting to the want of consideration for their promise in case the broker has not paid them. The receipt of course is no bar to an action for the premium, but is simply conclusive as to a considera-

tion for the policy. This doctrine is clearly distinguishable from that class of cases in which the insured gives his note for the premium, and agrees that if his note is not paid at maturity the policy shall become void. In such a case the policy is operative until the happening of the condition subsequent. *Pitt v. Berkshire Ins. Co.*, 100 Mass. 500; *Baker v. Ins. Co.*, 43 N. Y. 283. The evidence in those cases was not admitted to show that the contract was originally void for want of consideration, but to show in what the consideration consisted and that the policy had become void for conditions broken. Neither does it collide with the doctrine of forfeiture upon failure to pay assessments in fraternal society insurance, as in *Reichenback v. Ellerbe*, 115 Mo. 588, nor to strictly assessment plan insurance.

In this contract the amount of insurance to be paid in case of loss is a fixed sum, and the premium, $34.20 semi-annually, is a fixed premium, and while it has an assessment feature we do not think the principles of assessment insurance can be applied to the point now in issue. But there is another view to be taken of the condition in this policy which provides that if any payment provided for is not received within thirty days from the date of the assessment then such failure to pay shall be deemed conclusive evidence that the insured has terminated his connection with the company and the policy shall lapse and become void, and it is this: This clause on its face refers to the nonpayment of an assessment in the future after the policy had once become a binding contract, and not to the payment of the fixed premium of $34.20 to be paid in advance. As said in *Hanford v. Ben. Ass'n*, 122 Mo. 50, calling these fixed premiums "assessments" does not make them so. In this respect at least this policy is to be governed by the principle applied to ordinary life insurance policies. This condition was inserted

by the company for its own benefit and will be construed strongly against it. A similar case arose in Massachusetts. *McAllister v. Ins. Co.*, 101 Mass. 558. In that case a policy was issued to the insured acknowledging receipt of the premium. As a matter of fact only one third of it was paid in cash, and two notes given for the balance. The policy provided "in case any premium due upon this policy shall not be paid at the day when payable the policy shall thereupon become forfeited and void" and "this policy does not take effect until the premium is paid." The policy holder failed to pay the two notes given for part of the premium. The company retained his notes, he retained his policy. The court held that the company might take notes for the premium; that the policy took effect and the only question was whether it was terminated by failure to pay the notes. Upon that question the court said: "The defendants rely upon that provision of the policy which declares that 'in case any premiums due upon the policy shall not be paid at the day when payable, the policy shall thereupon become forfeited and void,' except for a certain period which had expired before the death of the assured in this case. But the court is of the opinion that this clause, which is inserted for the benefit of the insurers, and to be construed most strongly against them, and which merely provides that the policy 'shall become forfeited,' in case a premium 'shall not be paid at the day when payable,' can only apply to a policy which has once taken effect, and to non-payment of a premium payable after that time, and can not be held to refer to that premium which the policy contemplates and requires to be paid before the contract of insurance has any binding force." As this policy or certificate provides on its face for a change of rate and future assessments, we think that the provision refers to an

assessment to be levied after the first semi-annual premium which was fixed by their contract, and had no reference to the nonpayment of the first premium without the payment of which or its waiver, plaintiff's husband would not have been entitled to the certificate or policy, and the nonpayment of the first premium is not made a ground of forfeiture.

Having reached the conclusion that the plaintiff established a *prima facie* case and that all the evidence offered by defendant tended only to prove there never was a binding contract, and holding as we do that evidence incompetent for that purpose, it is obvious that no error was committed in refusing defendant's instructions.   But we think on the merits there was no proof that Mr. Dobyns did not pay his first semi-annual premium.   His two letters fall far short of such proof. To us it seems that Mr. Dobyns, conscious that he had paid his semi-annual premium, was astonished to receive notice that "assessment" of $34.20 had been imposed on him under the provisions of the fifth clause of the policy.   He says: "It was my understanding that the price, $34.20, would never be higher and no other expense to me."   The confused statements of the treasurer of the company that this policy had lapsed because of Mr. Dobyns' failure to pay a call "due June 1st," and that this call was for $11.40, when as a matter of fact there never was such a call, certainly justified the trier of the facts in disregarding his statement as utterly unsatisfactory.   We can not agree with defendant's counsel that it made out an absolute defense, even if such a defense was admissible. On the contrary we think the preponderance was in favor of the plaintiff even on the issue of payment or no payment.   In actions at law where there is conflicting evidence and a jury is waived, the trial court should give and refuse declarations of law in order to enable

the appellate courts to see on what theory it proceeded and to understand its finding of the facts (*Suddarth v. Robertson*, 118 Mo. 286), or make its finding under section 2135, Revised Statutes 1889.

This the circuit court did not do in this case, but, inasmuch as we have reached the conclusion that the evidence on the issue tendered by defendant as to the non-payment of the first semi-annual premium was not competent for that purpose, no error was committed in refusing defendant's instructions, and as there was sufficient evidence to justify the finding for plaintiff the judgment is affirmed.

SHERWOOD and BURGESS, JJ., concur.