## DENVER & R. G. R. CO. v. ARRIGHI.

(Circuit Court of Appeals, Eighth Circuit.   November 10, 1905.)

### No. 2,227.

1. WRIT OF ERROR—EFFECT OF REVERSAL—RIGHT TO DIRECTED VERDICT.

The reversal of a judgment by an appellate court, on the ground that the trial court erred in refusing defendant's motion to direct a verdict in its favor, does not entitle defendant to a directed verdict on a second trial, unless the evidence is substantially the same.

[Ed. Note.—For cases in point, see vol. 3, Cent. Dig. Appeal and Error, § 4665.]

2. MASTER AND SERVANT—ACTION FOR INJURY OF BRAKEMAN—CONTRIBUTORY NEGLIGENCE.

The mere fact that a plaintiff, while employed as a brakeman by defendant railroad company, was injured in coupling cars with a link and pin coupling, used by defendant in violation of Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174], creates no presumption that he was negligent, and unless his contributory negligence is conclusively shown by the evidence it is a question for the jury.

In Error to the Circuit Court of the United States for the District of Colorado.

Arrighi sued the railroad company to recover damages for an injury to his hand, caused as he alleges by the negligence of the company in not equipping its cars as provided by section 2 of the act of Congress of March 2, 1893 (27 Stat. 531, c. 196 [U. S. Comp. St. 1901, p. 3174]), relating to automatic couplers. In support of his case Arrighi introduced evidence, which was undisputed by the company, showing the following facts: While in the employ of the railway company as a switchman, and on the 19th day of November, at Salida, Colo., Arrighi was injured while endeavoring to effect a coupling of two narrow gauge freight cars, one of which was at the time employed in moving interstate traffic. Neither car was equipped with couplers coupling automatically by impact. The drawbars of each were equipped with link and pin couplings. It therefore became necessary for Arrighi to go between the ends of the cars in the performance of his duties. Arrighi entered the employ of the railroad company November 12, 1901, and the seven days intervening between this date and the date of his injury was all the experience he ever had with link and pin couplings and as switchman. He was 32 years of age and had worked for seven or eight years for the Rock Island Railway Company as brakeman on passenger trains, but said trains did not use the link and pin coupling. There was no defect in the coupling itself which contributed to the accident. Arrighi was the only witness who testified as to how he made the coupling. He testified upon this matter as follows: "I went over and set my pin on the coupling at the end of a string of cars that was standing still, then I stepped back and gave the signal for the engineer to come ahead for me to make my coupling. The link was in the moving car coming towards me. I took hold of the link as the car approached to guide it, and when I got the link in the coupling my hand was caught, and I could not possibly get my hand out. I tried to get my hand out at the earliest time possible. It was necessary to raise the link in order to have it go into the drawhead on the standing car." There was no evidence whatever that Arrighi was in any wise negligent in the way he made the coupling unless the fact that he was injured is such evidence. Upon this state of facts the railroad company moved the trial court at the close of plaintiff's evidence to direct the jury to return a verdict in its favor, which motion was refused, and an exception taken to such ruling.

William W. Field (Joel F. Vaile and Charles W. Waterman, on the brief), for plaintiff in error.

William L. Dayton and Harvey Riddell, for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and CARLAND, District Judges.

CARLAND, District Judge, after stating the facts as above, delivered the opinion of the court.

This case was before this court on writ of error at a previous term of this court, and the judgment therein was reversed and a new trial ordered. Denver & R. G. R. Co. v. Arrighi, 129 Fed. 347, 63 C. C. A. 649. A new trial having been had, the case is again here on exception to the ruling of the trial court in refusing to direct a verdict for the railroad company. At the prior hearing of the case this court was of the opinion that a verdict ought to have been directed for the railroad company on account of the contributory negligence of the defendant in error. If the facts shown by the present record are the same as on the former hearing, the decision then made is the law of the case, and the judgment now sought to be reviewed must be reversed in accordance therewith. The evidence introduced at the first trial is not before us, except as it appears from the opinion of the court. We are convinced from an examination of the opinion that the evidence introduced at the second trial could not have been the same as that introduced on the first for the following reasons: It is stated in the opinion that Arrighi was thoroughly acquainted with the link and pin coupling. This fact does not appear in the record in this case. It is stated in the opinion that Arrighi adopted the most dangerous method of performing his duty. This fact does not appear in the record now under consideration. From all that now appears in the record he adopted the only way practicable to make the coupling. It is stated in the opinion that it did not appear that Arrighi ever made any effort to remove his hand. It appears in this record that he withdrew his hand as soon as possible. We therefore are of the opinion that we are not concluded by the judgment rendered when the case was first here.

Two grounds are seriously urged by the counsel for plaintiff in error why the judgment below should be reversed: First. That the decision of this court on the first writ of error absolutely entitled the plaintiff in error to a directed verdict in its favor. Second. That the evidence on the second trial affirmatively shows that Arrighi's injuries resulted from his own contributory negligence and not proximately from the failure of the railroad company to equip its cars with automatic couplers as prescribed by Act Cong. March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]. The first point for the reasons heretofore stated we do not think well taken. The decision of the second point requires an examination of the evidence now before us. The act of negligence alleged against the company is not disputed, but it is urged that the evidence shows that Arrighi's want of ordinary care in making the coupling was the proximate cause of his injury and not the negligence of the railroad company.

The position of counsel for the railroad company may be stated thus: The trial court and this court must take judicial notice that thousands of couplings were made daily with link and pin couplers when they were in use without injury to the person making the same. Therefore, in a case like the one at bar, where the counsel for the company can point to no act of negligence on the part of Arrighi, the court must presume as matter of law that he was negligent because he was injured; there being nothing in the evidence to show that he was prevented in any manner from exercising ordinary care in making the coupling. If the court could take judicial notice that no man exercising ordinary care was ever injured in making couplings with link and pin, then there would be force in the position of counsel for the railroad company, but judicial notice is a two-edged sword in this case. If, on the one hand, the court shall judicially take notice that thousands of couplings were daily made with link and pin when they were in use without injury to the person making the same, we may also take judicial notice that the use of link and pin couplers are so inherently dangerous to life and limb that the attention of Congress was repeatedly called to the fact by the President and legislation urged to remedy the evil. 9 Messages and Papers of the Presidents, p. 51. The act under which Arrighi brings this action was the answer Congress made to the demand made upon it. We cannot presume that Congress legislated in order to protect careless and negligent employés alone; on the contrary, we must presume that Congress legislated because it was well known that employés in the exercise of ordinary care were continually being injured by the use of the link and pin coupler on account of its inherent danger. We conclude, therefore, that the mere fact that Arrighi was injured created no presumption against him, and that it was for the jury to say whether he exercised ordinary care in making the coupling. Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Northern Pacific v. Tynan, 119 Fed. 288, 56 C. C. A. 192; St. Louis I. M. & S. Ry. Co. v. Leftwich, 117 Fed. 228, 54 C. C. A. 1; Choctaw, O. & G. Ry. Co. v. Tennessee, 116 Fed. 23, 53 C. C. A. 497.

Other errors assigned have been considered and found to be without merit. The judgment of the trial court must be affirmed, and it is so ordered.